UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Case No.:   1:22-cv-03162
ASHLEIGH AWUSIE,

                  Plaintiff,

      -against-

HUDSON YARDS CATERING, LLC, individually
and d/b/a "UNION SQUARE EVENTS," and ALAN
ZURITA, individually,

                  Defendants.
------------------------------------------------------------------X

**COMPLAINT**

Plaintiff Demands a
Trial By Jury

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, upon information and belief, complains of the Defendants as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq*. ("ADA"), and to remedy violations of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by Defendants on the basis of her actual and/or perceived disability, together with failure to provide a reasonable accommodation, failure to engage in the interactive process and/or cooperative dialogue, retaliation and unlawful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. The Court also has jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

5. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of the State of New York.  28 U.S.C. §1391(b).

6. On or about December 6, 2021, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC").

7. On or about March 31, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

8. This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

**PARTIES**

9. Plaintiff was and is a disabled female resident of the State of New York, County of New York.

10. When she was two years old, Plaintiff suffered a stroke which impacted the right side of her brain and the left side of her body.  Throughout her childhood, Plaintiff experienced cognitive and developmental impairments and spent many years in speech pathology, physical therapy sessions, and dance classes.

11. Although Plaintiff was able to successfully overcome her developmental impairments, and has forged a career as a writer, singer, and actress, she continues to experience occasional physical weakness, numbness and/or pain on the left side of her body.  Plaintiff manages her chronic pain with dance classes and medication, as needed.

12. At all times material, Defendant HUDSON YARDS CATERING, LLC, individually and d/b/a "UNION SQUARE EVENTS" (hereinafter referred to as "UNION SQUARE EVENTS") was

and is a domestic business corporation duly incorporated under the laws of the State of New York.

13. At all times material, Defendant UNION SQUARE EVENTS was and is a New York City catering and events company, and a part of Danny Meyer's Union Square Hospitality Group.

14. At all times material, Defendant ALAN ZURITA (hereinafter referred to as "ZURITA") was and is a resident of the State of New York.

15. At all times material, Defendant ZURITA was and is working as a "Senior Human Resources Business Partner" for Defendant UNION SQUARE EVENTS.

16. Defendant UNION SQUARE EVENTS and Defendant ZURITA are collectively hereinafter referred to as "Defendants."

17. At all times material, Plaintiff was an employee of Defendant UNION SQUARE EVENTS.

## MATERIAL FACTS

18. On or about August 19, 2013, Plaintiff began working for Defendant UNION SQUARE EVENTS as a "Server."  Plaintiff was regularly scheduled to work on events and parties catered by Defendant UNION SQUARE EVENTS and/or its owner and CEO, restaurateur Danny Meyer himself.

19. Throughout her employment, Plaintiff worked under the supervision of Defendant UNION SQUARE EVENTS' "Director of Sales and Events," Suzanne Blezard.

20. Despite the long-term effects of her stroke, Plaintiff was able to perform her duties without the need for an accommodation.  In fact, Plaintiff did not disclose her history of stroke, or the long-term effects of her stroke, to her employer because she did not want to be perceived as a "liability," especially because she wasn't.  However, Plaintiff did disclose her prior stroke and long-term effects of her stroke to her colleagues.

21. Throughout her employment, Plaintiff was praised for her performance from clients, venue teams and staff, and Mr. Meyer.  In fact, Mr. Meyer regularly handpicked Plaintiff to work on catering events at both his New York City and Hamptons homes.

22. On or about March 18, 2020, Plaintiff was laid off due to the COVID-19 pandemic.

23. In or around the end of August 2020, Ms. Blezard telephoned Plaintiff and asked her to return to work on Defendants' upcoming events.  Ms. Blezard then asked Plaintiff whether she would like to return to work for the company as an "Events Captain." Plaintiff agreed.

24. On or about August 23, 2020, Plaintiff completed "new hire" paperwork which indicated that she would earn $45/hour if she was staffed as a Captain, $31/hour if she was staffed as a Server, and an additional $15/hour for any travel required for out-of-state events, as needed.

25. Throughout the rest of 2020 and 2021, both at work and outside of work, Plaintiff wore personal protective gear (PPE) and underwent polymerase chain reaction (PCR) testing once or twice per week, every week.  Plaintiff took these precautions for her own health and safety but also about because of her elderly father, who was immunocompromised and suffering from dementia.

26. On or about June 10, 2021, in an email, Defendant ZURITA notified the staff that the organizers of an upcoming event for Bloomberg Philantropies requested that the Defendants' staff must show proof of vaccination.

27. In the email, Defendant ZURITA also informed the staff that any upcoming events that required vaccination would be labeled as "vaccine required."  Defendant ZURITA also proposed that staff should "consider registering for the Excelsior Pass […] **which will allow you to provide digital proof of a negative result** or vaccination that follows the state guidelines." (emphasis added).

28. Plaintiff, who was originally scheduled to work as a Captain during the Bloomberg Philantropies event, realized that she would be removed from that shift.

29. At the time, Plaintiff was already speaking with her doctor, Rachel Anna Roth, M.D. about receiving the vaccine. After reviewing Plaintiff's medical history, Dr. Roth advised against Plaintiff's receipt of the vaccine because there was a high likelihood of severe side effects and/or an onset of stroke-like symptoms.

30. On or about June 10, 2021, after receiving Defendant ZURITA's email, Plaintiff telephoned Senior Booking Manager, Zihara Ricart-Espinal, and informed her about her prior history of stroke and her concerns about receiving the COVID-19 vaccine. This put Defendants on notice of Plaintiff's disability and need for a reasonable accommodation in the form of an exemption from the COVID-19 vaccine. During the call, Ms. Ricart-Espinal directed Plaintiff to contact Defendant ZURITA directly regarding the issue.

31. Immediately after, Plaintiff emailed Defendant ZURITA and requested clarification regarding the late notice about the vaccination requirement for the Bloomberg Philantropies event. Plaintiff also inquired whether she would be removed and/or compensated for the late removal from the event. Defendant ZURITA asked Plaintiff whether he could give her a call and give her an "update."

32. During their phone conversation, Plaintiff disclosed her medical history, including her prior stroke and long-term effects, as well as Dr. Roth's recommendation against receiving the vaccine. Plaintiff specifically stated, "I spoke to my doctor about this and she recommended that I decline the vaccine based on my medical history. **My prior stroke is a legitimate reason to decline the vaccine, and I hope I will not be penalized for having a disability**." Plaintiff also stated that she was willing and able to submit to PCR tests regularly. Defendant ZURITA

informed that full vaccination was required prior to working the Bloomberg event, but assured Plaintiff that she would not be "penalized," and that she could still work on other events that did not require full vaccination. Defendant ZURITA promptly took Plaintiff off the shift, and staffed her on another event that did not require proof of vaccination.

33. On or about July 30, 2021, Defendant UNION SQUARE EVENTS sent a company-wide email mandating that all employees get the vaccine by September 7, 2021.

34. On or about August 6, 2021, against her doctor's recommendation, but fearing termination based on Defendants' email, Plaintiff went to Harlem Hospital and received the first dose of the Pfizer-BioNTech vaccine.[1]

35. However, within a day, Plaintiff began to experience severe side effects to the first dose of the vaccine. Specifically, Plaintiff experienced itchy eyes, arm pain, and increasing numbness on the right (dominant) side of her body.

36. That night, Plaintiff started feeling pain in her right leg above the knee, and a tingling sensation below the knee. Plaintiff was also unable to sleep or lie on her right side.

37. The following morning, Plaintiff woke up and felt excruciating pain and numbness, and she was unable to walk. As a result, Plaintiff was forced to remain in bed all day and she was forced to call out from a scheduled shift with Defendants. Plaintiff was also unable to walk for two days.

38. On or about August 18, 2021, Plaintiff met with Dr. Roth for a physical examination. After examining Plaintiff, Dr. Ross advised against receiving the second shot of the vaccine, and referred Plaintiff to see a neurologist regarding her symptoms.

---

[1] After receiving the first dose, and disclosing her shellfish allergy and stroke medical history, the nurse who administered the vaccine asked Plaintiff to remain under observation a total of 30 minutes, which was 15 more minutes than most vaccine recipients.

39. On or about September 1, 2021, Plaintiff telephoned Ms. Ricart-Espinal and informed her about the severe side effects she experienced after receiving the first dose of the Pfizer-BioNTech vaccine, and her doctor's advice against receiving the second shot of the vaccine. Plaintiff requested to work the events that did not require vaccination. This constituted a request for a reasonable accommodation. Plaintiff assured Ms. Ricart-Espinal that she could still work on any and all events that did not require proof of vaccination. Ms. Ricart-Espinal again directed Plaintiff to speak with Defendant ZURITA about her concerns, and took Plaintiff off her next anticipated 2-day event, which was a large wedding outside of New York City.

40. Immediately after, Plaintiff telephoned Defendant ZURITA and informed him that she experienced severe side effects after receiving the first shot of the Pfizer-BioNTech vaccine. Plaintiff reiterated her request for a reasonable accommodation in the form of a medical exemption, based on her doctor's recommendation. Defendant ZURITA replied that he would discuss her request internally and follow up with her regarding any required medical documentation.

41. Later that same day, Defendant ZURITA emailed Plaintiff and sent her a "template for disability Accommodation," also stating that he would "get this ahead to our legal team to review as [accommodations] are not guaranteed." Defendant ZURITA also asked Plaintiff to send him a doctor's note.

42. On or about September 3, 2021, Defendant ZURITA emailed Plaintiff to inquire about her vaccination status. Plaintiff replied with a copy of her vaccination card, showing that she received the first dose of the Pfizer vaccine. Plaintiff also informed Defendant ZURITA that she was going to provide a vaccine exemption letter.

43. On or about September 7, 2021, Plaintiff saw her neurologist, Ewa Koziorynska, M.D., at 14th Street Medical Arts, for a neurological evaluation. Plaintiff also asked Dr. Koziorynska for a letter for her employer's review.

44. On or about September 8, 2021, at 1:15 p.m., Defendant ZURITA emailed Plaintiff and stated that Defendants would "extend" her work until September 12, 2021, and then she would be placed on an "unpaid leave of absence status" pending Defendants' receipt of the accommodation form from her doctor.

45. Later that same day, at 2:34 p.m., Plaintiff sent Defendant ZURITA a letter from her treating neurologist, Ewa Koziorynska, M.D., which stated,

> "[Plaintiff] was seen in my office on 8/24 & 9/7/21 or numbness and weakness over the R(ight) side of her body. Started night of taking first Pfizer vaccine Aug 6, 21. [Plaintiff] has weakness that started in her R(ight) leg and now is progressing and involving R(ight) arm. I ask you exempt her from taking second dose of vaccine."

46. Defendant ZURITA confirmed receipt of Plaintiff's note, but also asked Plaintiff to send him a completed "Disability Accommodation Covid-19 Form." Plaintiff confirmed that she would also ask Dr. Koziorynska to complete the form.

47. However, Defendants did not intend to engage in the interactive process and/or cooperative dialogue or provide Plaintiff with a reasonable accommodation on the basis of her actual and/or perceived disability.

48. In fact, Defendants did not even wait for Plaintiff to submit a completed "Disability Accommodation Covid-19 Form" from Dr. Koziorynska.

49. On or about September 10, 2021, Defendant ZURITA emailed Plaintiff and asked her whether she was available for a "quick meeting." Plaintiff confirmed, and they scheduled a meeting for the following day, September 11, 2021.

50. On or about September 11, 2021, at 10:00 a.m., via Microsoft Teams, Plaintiff met with Mr. Zurita and Director of HR, Diana Gethius.  **During the meeting, Ms. Gethius terminated Plaintiff's employment**, stating that her request for a medical exemption to the COVID-19 vaccine would constitute a "hardship on the company."

51. During the call, Plaintiff reiterated that she could not control her physical reaction to vaccine, and explained that she agreed to take the first dose of the vaccine against her physician's recommendation, in an effort to demonstrate her dedication to the position and to her employer's requests.  Nonetheless, Ms. Gethius stated, "If you get the second dose, you can come back, but it's your choice, of course."  Defendant ZURITA informed Plaintiff that her last day of work would be September 13, 2021.

52. Later that same day, Defendant ZURITA emailed Plaintiff a termination letter dated September 10, 2021, purportedly from Defendants' Chief People Officer, Patti Simpson, which stated,

    > "On 9/1/2021, you requested an exemption from the Company's policy because you have a disability that prevents you from becoming vaccinated. Thank you for engaging with us in a cooperative dialogue regarding your request.  Unfortunately, Company will be unable to grant your request for an exemption because:
    >
    > - **Any reasonable accommodation would cause a direct threat to you and others; and**
    > - **Any reasonable accommodation would cause the Company undue hardship.**
    >
    > If you have any questions, please do not hesitate to contact me.  If you become fully vaccinated in the future, we would be happy to welcome you back to the Company should there be an available and suitable position and if our business circumstances otherwise permit."

53. In that same email, further indicating that they did not intend to reemploy Plaintiff, Defendants also sent her a separation agreement.

54. Defendants did not provide Plaintiff with any explanation and/or justification as to *how* "[**a**]**ny**

**reasonable accommodation would cause a direct threat to you and others."**

55. Defendants did not actually explain and/or state how providing Plaintiff with "[a]ny reasonable accommodation (that) would cause the Company undue hardship."

56. Despite the language of the September 10, 2021 letter, Defendants did not engage in the cooperative dialogue and/or interactive process regarding Plaintiff's request for a reasonable accommodation.

57. Defendants made the decision to terminate Plaintiff before receiving a completed "accommodation request" form from her doctor and before discussing potential alternative accommodations, such as working on events that were outdoor and/or that did not require proof of vaccination.

58. Defendants did not actually discuss and/or offer Plaintiff any reasonable accommodations.

59. Additionally, on or about September 12, 2021, Ms. Ricart-Espinal informed Plaintiff that Defendant ZURITA requested Plaintiff's removal for that day's outdoor Central Park event (which did not require proof of vaccination). This was Plaintiff's last opportunity for Plaintiff to earn an income before Defendants' unlawful termination.

60. Later that same day, and in an effort to conceal their unlawful actions, Defendant ZURITA sent out an email to all staff regarding Defendants' commitment to their employees pursuant to the The New York Health and Essential Rights Act (NY HERO Act). The email also indicated that Defendants would reinstate health screenings for their employees. Crucially, nowhere in Defendants' Hero Act form does it state that employees are required to be vaccinated as a condition of employment.

61. To date, Plaintiff continues to receive email notifications regarding upcoming catering events.

62. Defendant UNION SQUARE EVENTS terminated Plaintiff's employment in order to avoid

having to provide her with a reasonable accommodation in the form of a vaccine exemption.

63. Defendant UNION SQUARE EVENTS did not engage in the interactive process and/or cooperative dialogue with Plaintiff regarding her request for a reasonable accommodation and/or medical exemption to the COVID-19 vaccine.

64. Defendant UNION SQUARE EVENTS terminated Plaintiff because of her actual and/or perceived disability.

65. Defendant UNION SQUARE EVENTS terminated Plaintiff because she requested and/or needed a reasonable accommodation.

66. Defendant UNION SQUARE EVENTS would not have discriminated against Plaintiff but for her request for a reasonable accommodation and/or request for a medical exemption to the COVID-19 vaccine.

67. Defendant UNION SQUARE EVENTS would not have retaliated against Plaintiff but for her request and/or need for a reasonable accommodation.

68. As a result of UNION SQUARE EVENTS's actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

69. As a result of Defendant UNION SQUARE EVENTS' discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional distress and physical ailments.

70. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

71. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

72. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

**AS A FIRST CAUSE OF ACTION
UNDER THE AMERICANS WITH DISABILITIES ACT ("ADA")
DISCRIMINATION
(Not Against Individual Defendants)**

73. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74. Plaintiff claims the Defendants violated Title I and V of the Americans with Disabilities Act of 1990 (Publ. L. 101-336) as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101. Sec. 12112 specifically states:

> (a) General Rule- No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

75. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION
UNDER THE ADA
RETALIATION and INTERFERENCE
(Not Against Individual Defendants)**

76. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

77. Sec. 12203 of the ADA. Prohibition against retaliation and coercion provides as follows:

> a. Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this

    chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

    b. Interference, coercion, or intimidation: It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

78. Defendants violated Plaintiff's above rights as set forth herein.

## AS A THIRD CAUSE OF ACTION
## UNDER STATE LAW
## <u>DISCRIMINATION</u>

79. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's … disability … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

81. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff on the basis of her actual and/or perceived disability, together with failure to engage in the interactive process, failure to provide a reasonable accommodation, and unlawful termination.

82. Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## UNDER STATE LAW
## **RETALIATION**

83. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person before he has opposed any practices forbidden under this article."

85. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of her request and/or need for a reasonable accommodation.

## AS A FIFTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## **DISCRIMINATION**

86. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual and/or perceived … disability… of any person; […] (2), to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

88. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff on the basis of her actual and/or

perceived disability, together with failure to provide a reasonable accommodation, failure to engage in the cooperative dialogue, and unlawful termination.

## AS A SIXTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## RETALIATION

89. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

90. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

91. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of her request and/or need for a reasonable accommodation.

**WHEREFORE,** Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA, the New York State Executive Law and the New York City Administrative Code on the basis of Plaintiff's actual and/or perceived disability, together with failure to provide a reasonable accommodation, failure to engage in the interactive process and/or cooperative dialogue, retaliation and unlawful termination;

B. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D. Awarding Plaintiff Punitive Damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: April 18, 2022
New York, NY

**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*

By: _____
Silvia C. Stanciu, Esq.
45 Broadway, Suite 430
New York, NY 10006
212- 248 -7431